IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-69-FL

| | | |
|---|---|---|
| SHEILA BELL SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Shelia Bell Smith ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and disability insurance benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends granting Plaintiff's Motion for Judgment on the Pleadings [DE-21], denying Defendant's Motion for Judgment on the Pleadings [DE-25], and remanding this matter to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 18, 2010, alleging disability beginning April 24, 2004. (Tr. 157, 164.) The application was denied initially and upon reconsideration, and a request for hearing was timely

filed. (Tr. 101, 111.) On February 23, 2011, a hearing was held before Administrative Law Judge Christopher Willis ("ALJ"), who issued an unfavorable ruling on September 16, 2011. (Tr. 32.) Plaintiff's request for review by the Appeals Council was denied March 8, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–4.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

**II. Disability Determination**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

**III. ALJ's Findings**

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff was not engaged in substantial gainful employment since April 24, 2004, the date of alleged disability. (Tr. 34.) Next, the ALJ determined Plaintiff has the following severe impairments: history of coronary artery disease, hypertension, bilateral knee osteoarthritis and obesity. *Id*. However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 34-35.)

3

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff has the ability to perform light work subject to the following restrictions:

> she can occasionally climb ramps and stairs, but not ladders, ropes or scaffolds; no more than occasional balancing and stooping, but no kneeling, crouching, or crawling; she can occasionally push and pull with both lower extremities; avoid concentrated exposure to hazards; she must work in an environment that allows for a sit/stand option, which allows her to stay on task for two-hour periods throughout an eight-hour workday; she is limited to simple, routine, repetitive tasks due to pain; and she requires an assistive device for ambulation.

(Tr. 36.) In making this assessment, the ALJ found Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms not fully credible. (Tr. 37-38.) At step four, the ALJ concluded Plaintiff did not have past relevant work. (Tr. 39.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 39.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on several grounds. Plaintiff contends: (1) that the ALJ improperly rejected the opinions of her treating physicians; (2) that the ALJ erred in considering whether Plaintiff's impairments meet or equal Listing 1.02 (Major Dysfunction of a Joint); and (3) that the ALJ erred in assessing Plaintiff's credibility.

### A. Treating Physician

The court first addresses Plaintiff's argument that the ALJ erred in giving more weight to the nonexamining consultants in this case than to her treating physicians. The general rule is that a treating source's opinion is entitled to more weight than a non-treating source's, and an

examining source's opinion should be accorded more weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(c). "Generally, [the Commissioner] give[s] more weight to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Id.* Thus, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted).

"Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011); *see also* 20 C.F.R. § 404.1527(d)(1). The Commissioner will consider a medical opinion "on the nature and severity of [a claimant's] impairments," but a statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is not "given any special significance." 20 C.F.R. § 404.1527(d)(2).

Plaintiff first complains that the ALJ failed to give adequate weight to the opinion of her treating physician, Dr. Melissa Taylor. In a letter dated February 28, 2008, and addressed "To Whom it May Concern," Dr. Taylor stated, in pertinent part, as follows:

5

> Ms. Sheila Smith has been a patient of mine for nearly two years. She has been diagnosed with coronary artery disease and severe osteoarthritis in her knees. Due to her medical conditions, she is not able to work.

(Tr. 342.) Because Dr. Taylor's statement concerns an issue reserved to the Commissioner, it is not a medical opinion as defined by the regulations. Accordingly, the Commissioner did not err in failing to give this opinion any weight.

Plaintiff also asserts that the ALJ erred in failing to consider Dr. Kamath's statement that Plaintiff was "quite debilitated in her ability to walk and is able to move only 20-30 feet at a time before having to stop and sit due to discomfort." (Tr. 323.) The evidence in this case reflects that the statement at issue was contained in the "History of Present Illness" section of a clinic note made by Dr. Kamath. It is based on Plaintiff's subjective assessment of her condition, and not on medically acceptable clinical and laboratory diagnostic techniques. As such, this statement is not accorded the weight of a medical opinion. Nevertheless, the ALJ did consider the statement, as well as Dr. Kamath's explanation that he did not want to perform arthroplasty because of the potential for complications. The ALJ also took note of medical records indicating that "Plaintiff's gait is slow and that she uses a cane for short distance." (Tr. 37.) In his RFC determination, the ALJ imposed a restriction for use of a hand-held assistive device, as well as a requirement that Plaintiff be allowed to alternate sitting and standing at will as long as she was able to stay on task for two hour periods throughout the workday. (Tr. 36-37.) Plaintiff has not shown that the ALJ failed to accord appropriate weight to Dr. Kamath's opinions.

### B.    Medical Listing 1.02A

At step three of the sequential process, the ALJ was required to determine whether Plaintiff's impairments meet or equal an impairment listed in the regulations. Plaintiff argues that

the ALJ failed to adequately explain the basis of his determination that Plaintiff did not meet Listing 1.02A.

The burden of proof at step three is on the claimant to show that she meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. §§ 404.1525(e)(5), 404.1526. To establish medical equivalence, a claimant must "present medical findings equal in severity to *all* the criteria" for that listing. *Zebley*, 493 U.S. at 531.

Where a claimant has a severe impairment and the record contains ample evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue*, No. 5:11-CV-409-D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). Where the ALJ fails to make the necessary comparison or fails to explain the basis for his decision other than in a summary or conclusory fashion, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. *Cook*, 783F.2d at 1173; *cf. Johnson v. Astrue*, 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) ("Meaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook*

7

where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.").

At issue in this case is the ALJ's application of Listing 1.02. Listing 1.02, entitled "Major dysfunction of a joint(s) (due to any cause), is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. Where, as here, the joint is of the lower extremity, it must also involve "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle)," and "result[] in [the] inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. "Inability to ambulate effectively" is defined by section 1.00B2b:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b).

8

Plaintiff's symptoms in this case appear to correspond to some or all of the requirements of Listing 1.02A. The medical evidence of record establishes a history of chronic bilateral knee pain with decreased motion and "marked crepitation." (Tr. 321-22, 344-45.) Medical imaging in 2004 shows tricompartmental osteoarthritic degenerative changes, marked narrowing of the joint spaces, sclerosis and osteophytosis," as well as "a loose joint body on the left." (Tr. 304.) X-rays in 2006 were interpreted as showing "severe endstage" degenerative joint disease "with complete loss of joint space in the medial compartment." (Tr. 349.) In 2006, an examination revealed "[p]alpable medial osteophytes." (Tr. 345.) X-rays in 2010 showed varus angulation of the right knee, "bone-on-bone" medial tibiofemoral joint narrowing and "[a] well-circumscribed osseous density . . . in the right lateral tibiofemoral compartment, possibly representing a loose body." (Tr. 321.) It is also noted in the record that Plaintiff has difficulty walking. (Tr. 321, 330, 334). The ALJ found that Plaintiff requires an assistive device for ambulation (Tr. 36), and Plaintiff testified that she uses a walker from time to time (Tr. 67-68.)

The ALJ identified Listing 1.02 as relevant to Plaintiff's bilateral knee osteoarthritis; however, it is not clear from the record whether he properly considered Plaintiff's symptoms as they relate to the criteria of Listing 1.02A. Although the ALJ found that Plaintiff's osteoarthritis did not meet or medically equal Listing 1.02A, the only explanation given for his decision is as follows:

> The undersigned evaluated the claimant's bilateral knee osteoarthritis under Listing 1.02 . . . . However, this impairment is not characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and finding on appropriate medically acceptable imaging of join[t] space narrowing, bony destruction, or ankylosis of the affected joint. Moreover, this impairment is not characterized by one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively, as defined in 14.00C6. . . .

(Tr. 35.)

9

Case 7:13-cv-00069-FL   Document 27   Filed 04/17/14   Page 9 of 12

From this explanation, the court is left to speculate whether the ALJ found that Plaintiff's impairment was not characterized by (1) gross anatomical deformity or chronic joint pain and stiffness; (2) signs of limitation of motion or other abnormal motion of either of the affected joints; or (3) appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis; or that it (4) did not involve one or major peripheral weight-bearing joints; or (5) result in an extreme limitation of Plaintiff's ability to ambulate. The language utilized by the ALJ suggests the absence of all of these factors, but such a finding is not supported by the medical evidence of record or the ALJ's other findings in the case.

More was required of the ALJ in this case. At a minimum, the ALJ was required to compare Plaintiff's symptoms and Listing 1.02A's criteria and provide an explanation for his determination at step three. Because the ALJ failed to do so, "it is simply impossible to tell whether there was substantial evidence to support the [ALJ's] determination." *Cook*, 783 F.2d at 1173.

### C. Plaintiff's Credibility

Plaintiff also contends that the ALJ erred in his evaluation of Plaintiff's credibility. At issue here is the ALJ's use of "boilerplate" language in which the ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with her residual functional capacity." (Tr. 37.) Plaintiff argues that the ALJ misapplied the law by engaging in a backward analysis that determined Plaintiff's RFC "without consideration of her credibility and then used her RFC determination as a yard stick to measure [Plaintiff'] credibility." (Mem. Supp. J. Pleadings [DE-22] at 9.)

10

In determining a claimant's RFC, the ALJ must consider both objective, medical evidence, as well as credible complaints made by the claimant. The ALJ undertakes this analysis in two steps. First, the ALJ must determine whether the claimant's medical impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. If so, the ALJ must then evaluate the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms "to determine the extent to which the symptoms limit the individual's ability to work." SSR 96-7p (Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements), 1996 WL 374186 (July 2, 1996). If not substantiated by objective medical evidence, the credibility of the claimant's statements must be assessed based on a consideration of the entire case record. *Id.* "This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.*

The "boilerplate" language used by the ALJ in this case has been the subject of debate and disfavored by a number of courts. The Seventh Circuit has described this language as "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see also Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012). United States District Judge Raymond A. Jackson of the Eastern District of Virginia has taken a similar view, stating as follows:

> Although the ALJ's full opinion may reflect support for his view of credibility of the Plaintiff's statements, the use of the boilerplate language calls into significant question whether the proper decisional process was undertaken by the ALJ in both reaching his Residual Function Capacity determination and evaluating the Plaintiff's credibility. In light of these questions, the Court believes it is prudent to remand this case to the ALJ to clarify this matter.

11

*Little v. Colvin*, No. 2:12-CV-300, 2013 WL 2489173, at *5 (E.D. Va. June 7, 2013).

In light of the disposition recommended herein, the undersigned does not address whether the "boilerplate" language to which Plaintiff objects constitutes a misapplication of the law. However, the undersigned cautions the Commissioner that upon remand her decision must contain specific reasons for any findings regarding Plaintiff's credibility, be supported by the evidence in the case record, and be sufficiently specific to make clear the weight given Plaintiff's statements and the reasons for the weight accorded. *See* SSR 96-7p.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-25] be DENIED and the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 17th day of April 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge